UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:24-CR-00123-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **JARMAR BUTLER (01)** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the court are Motions in Limine [docs. 42, 43] filed, respectively, by defendant Jarmar Butler and by the government. Both motions relate to the government's intention to use evidence of prior bad acts as intrinsic evidence or under Federal Rule of Evidence 404(b).

### I.
#### BACKGROUND

The defendant is charged in this court with one count of possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). According to the indictment, Butler was found in this district on or about October 21, 2020, in possession of one black, Radical Firearms AR style rifle, twenty-nine rounds of .223 ammunition, and two rounds of 9 mm ammunition. Doc. 1. The government now seeks to introduce evidence that Butler was apprehended on this date by the Calcasieu Parish Sheriff's Office after an arrest warrant and BOLO were issued in East Baton Rouge Parish on October 20, based on Butler's pursuit of his estranged wife and another individual in his vehicle and his use of a firearm to threaten them and disable their vehicle. For these actions defendant pled guilty

in the 19th Judicial District Court, East Baton Rouge Parish, Case No. DC-20-06072, to misdemeanor charges of simple assault, illegal discharge of a firearm, simple criminal damage to property, and domestic abuse battery. The government argues that these acts are admissible because they are "inextricably intertwined" with the charged conduct and/or part of a single criminal episode. Doc. 43. It further argues that these acts are admissible as extrinsic events under Federal Rule of Evidence 404(b) to show intent, knowledge, identity, and lack of mistake or accident. *Id.* Defendant maintains that the October 20 episode is of little probative value to the charged conduct and presents a substantial danger of unfair prejudice. Doc. 42.

## II.
## LAW & APPLICATION

### A. Governing Law

#### 1. Motions in Limine

Evidence should only be excluded in limine where it is "clearly inadmissible on all potential grounds." *Hull v. Ford*, 2008 WL 178890, at *1 (S.D. Tex. 2008) (citing *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993)). "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5174440, at *1 (W.D. La. Dec. 15, 2010) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)). Evidentiary rulings, however, "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id.*; *accord Baxter v. Anderson*, 277 F.Supp.3d 860, 863

(M.D. La. 2017). Additionally, motion in limine rulings "are not binding on the trial judge . . . and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n. 3 (2000).

**2. Intrinsic and extrinsic prior bad acts**

Evidence is generally admissible so long as it is relevant and not barred by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Among other grounds, the court may exclude relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.* at 403.

Rule 404(b) places limits on the admissibility of a defendant's uncharged crimes but applies only to evidence of extrinsic acts. *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007) (citing *United States v. Manning*, 79 F.3d 212, 218 (1st Cir. 1996)). "Intrinsic evidence, on the other hand, is generally admissible 'so that the jury may evaluate all the circumstances under which the defendant acted.'" *Id.* (quoting *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)). An act is intrinsic when it is "inextricably intertwined" with the crime charged, or both acts are part of a single criminal episode, or the first act was "a necessary preliminary" to the crime charged. *Id.* (citing *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005)).

If the act is extrinsic, then Rule 404(b) provides that evidence of it is inadmissible as character evidence in order to show that a person acted in conformity with that character. Such evidence may be admissible "for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). "At the threshold, however, evidence of an uncharged crime or 'other act' must be sufficient to support a finding that the crime or act actually occurred." *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015). Accordingly, the government must offer sufficient proof of the offense or it will be excluded as irrelevant. *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir. 2014). Proof of an uncharged offense is sufficient if a "jury could reasonably find . . . by a preponderance of the evidence" that the defendant committed the act. *Id.* at 424 (citing *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).

If the government meets this bar, the court then applies the two-part *Beechum* test. *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)). First the court must determine whether the evidence is relevant to an issue other than the defendant's character. *Id.* Then it must decide whether the probative value of the evidence is substantially outweighed by the risk of undue prejudice and whether it meets the other requirements of Rule 403. *Id.* Intrinsic evidence is likewise subject to Rule 403. *United States v. Barnes*, 803 F.3d 209, 210–11 (5th Cir. 2015).

The court may look to several factors in evaluating the prejudicial effect of such evidence, including: (1) the government's need for such evidence, (2) the similarity between the prior bad act and the charged offense, (3) the amount of time separating the two offenses, and (4) the availability of limiting instructions. *United States v. Sanchez*, 988 F.2d 1384, 1394 & n. 14 (5th Cir. 1993) (citing *Beechum*, 582 F.2d at 915). Probative value

"must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *United States v. Pruett*, 681 F.3d 232, 245 (5th Cir. 2012). The prejudice to defendant also increases to the degree the extrinsic offense resembles the charged offense. *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009).

  B. **Application**

At issue is the defendant's participation in several criminal acts in East Baton Rouge Parish, one day before he was apprehended in Calcasieu Parish. The police report narrative states:

> On 10/20/2020 at approximately 0953 hours, I, Sgt. Newman was dispatched to the 9000 block of Greenwell Street in reference to a shooting investigation.
> Upon arrival, I contacted [K.H.] and her sister [Y.B.] [B]oth females stated they were fine but advised [K.H.'s] vehicle had just been shot at several times by [Y.B.'s] estranged husband Jarmar Butler.
> Deputy notes the vehicle's rear driver side tire was flattened and I observed the vehicle to have four (4) bullet holes on the driver's side.
> [Y.B.] stated she and Jarmar are currently separated. She advised Jarmar arrived from Texas where he is currently living to spend time with their six year old son. On today, Jarmar got upset with her because she does not want to take him back.
> [Y.B.] stated prior to her and [K.H.] returning home . . . she ([Y.B.]) and Jarmar argued over the phone. When she and Hughes arrived home they observed Jarmar at the residence so they did not stoop but drove away to avoid conflict but Jarmar entered his vehicle and gave chase. [Y.B.] stated Jarmar continued to follow them and at one point when they were on Althea Drive, Jarmar was able to come around them and block their vehicle. Jarmar produced a handgun that he pointed at [Y.B.] while demanding she get out of [K.H.'s] vehicle. [Y.B.] refused to exit the vehicle and [K.H.] drives away. Jarmar follows them again and at the corner of Monterrey Blvd and Greenwell Springs Road he is able to use his vehicle to cut them off again. He again produces a gun that is pointed at [Y.B.] and [K.H.] while again demanding [Y.B.] get out of the car. [K.H.] again drives away. While fleeing Butler, [K.H.] drives westbound on Greenwell Street where Butler drives

>   along side the driver's side of her vehicle. He again produces a handgun but this time he shoots several times into the side of the vehicle while [K.H.] is driving to get she and Butler away from him.
>   	After [K.H.'s] vehicle becomes inoperable (the tire was hit by one of the shots) Jarmar pulls over in front of them and exits the vehicle but without being armed. Jarmar again demands [K.H.] [*sic*] get into his vehicle but she refuses. [Y.B.] states a passerby that witnesses some of what was going on stopped and allowed both [K.H.] and [Y.B.] to enter their vehicle and that driver drove away from the scene to get them to safety. Jarmar then flees the scene/area westbound on Greenwell Street.
>   	Deputy notes and Butler advised that this entire incident took place while Jarmar had the couple's six (6) year old son in the vehicle with him.

Doc. 43, att. 1, p. 13. K.H.'s vehicle was found in a ditch with several bullet holes, and multiple fired casings were recovered from the surrounding roadway. *Id.* at 35, 54. Y.B. called 911 during the pursuit, and gunshots can be heard during the recording. *Id.* at 74.

Butler was apprehended the next day during a traffic stop in Lake Charles, Louisiana, and the vehicle (a white Chevrolet Tahoe) that he had used in his pursuit of K.H. and Y.B. was located at his place of employment in nearby Sulphur, Louisiana. *Id.* at 48, 61; doc. 43, p. 7. Two live .9 mm rounds were recovered from Butler's front pants pocket when he was taken into custody. Doc. 43, att. 1, p. 62. Afterward, police searched Butler's vehicle and recovered a Radical Firearms Model RF-15 rifle loaded with twenty-nine .223 bullets. *Id.* at 61. The report also stated:

>   During a follow up with the victims, detectives learned that although Butler did not fire a rifle at them, he did get out of his vehicle with one and point it at the victims, demanding that one of the victims get inside his vehicle. Becoming fearful of being shot with the rifle, the victims fled the area, with Butler in pursuit. Unaware that detectives had located and seized a rifle from Butler's vehicle, detectives asked the victim to describe it. It was described as black in color, a "big, long gun" with a "scope" on the top. Said description matched the weapon seized from Butler's vehicle.

*Id.* at 48. In this matter, Butler is charged with being found in this district on or about October 21, 2020, in possession of one black, Radical Firearms AR style rifle, twenty-nine rounds of .223 ammunition, and two rounds of 9 mm ammunition. Doc. 1.

1. **Classification**

The government first argues that Butler's pursuit of and assault on Y.B. and K.H. is "inextricably intertwined" with the felon in possession charge. Accordingly, the court must determine whether the acts were intrinsic and admissible or extrinsic and subject to Rule 404(b). Specifically, the government argues that it is necessary to understand the context of Butler's possession of the gun. Felon-in-possession charges often have a connection to other uncharged offenses, necessitating proof of those offenses to "complete the story of the crime on trial." *United States v. Greer*, 631 F.3d 608, 614 (2nd Cir. 2011). Accordingly, courts have repeatedly held that evidence of a defendant's recent use of a firearm is intrinsic in his trial for possession of that same firearm. *Id.*; *United States v. Grimmond*, 137 F.3d 823, 832–33 (4th Cir. 1998); *United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017); *United States v. Duncan*, 766 F. App'x 604, 608 (10th Cir. 2019); *United States v. Daniels*, 2022 WL 4077131, at *2 (3rd Cir. Sep. 6, 2022).

Butler was apprehended in this district after a BOLO was issued related to his use of firearms, including the one charged in this offense, just one day earlier. Evidence of the offenses leading to the BOLO is necessary both to explain the circumstances of his encounter with law enforcement in this parish and his possession of the prohibited items. The evidence is therefore admissible, subject to Rule 403's balancing test *infra*.

Even if the evidence is considered extrinsic, it is still relevant based on the government's need to establish that Butler knowingly possessed the prohibited items. *E.g.*, *United States v. Ortiz*, 927 F.3d 868, 874 (5th Cir. 2019) (citing Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.43D (2015)). Butler's recent use of the rifle shows intent and an absence of mistake. Accordingly, the court will also consider the evidence's admissibility as extrinsic under Rule 404(b).

2. **Sufficiency of proof**

The defense only challenges this element to the extent that (1) the victims initially identified Butler's vehicle as a white GMC Yukon; (2) the victims only alleged that he fired a handgun, rather than a rifle, at them; and (3) video footage from Butler's place of employment, which is not in evidence, depicts the white Tahoe and the maroon Denali arriving in the parking lot but does not clearly show who the drivers were. On the first point, the initial police report records that Butler's vehicle was a white GMC Yukon. Doc. 43, att. 1, p. 8. But by the time the victims were interviewed, beginning shortly after noon on October 20, Y.B. identified the vehicle as a white Chevrolet Tahoe. *Id.* at 23–24. This interview took place before Butler was apprehended. Whatever the cause of the discrepancy, the vehicle was accurately identified before the BOLO was issued and there appears to be no dispute regarding Butler's connection to the white Tahoe.

As for which weapon Butler used, the victims stated that he used a handgun when firing at them but also pointed a black rifle with a scope on it at them when he got out of his car and demanded that Y.B. come with him. The fact that the handgun was not recovered has no bearing on the sufficiency of evidence connecting Butler to the rifle also used in

these offenses. Finally, the court has no need to review the video footage to determine if Butler can be identified in the parking lot. Butler himself was positively identified by the two victims, that bullet holes in their vehicle and the sound of gunshots during the 911 call corroborate their account, and that the vehicle he used in his pursuit was recovered the next day in the parking lot of his employer shortly after Butler was arrested in the same parish. Based on the information drawn from the police reports above, there is ample evidence to support a finding that he committed the offenses at issue in this motion.

3. **Relevance**

As for relevance, Butler's recent use of the prohibited items establishes intent, knowledge, and a lack of mistake in his charge for possession—particularly as to the gun that was found in a vehicle that he was not driving at the time of his arrest. The victims' testimony also serves to identify him as the driver of the white Tahoe, on the lam from East Baton Rouge Parish. "By pleading not guilty to the charges and requiring the government to prove the elements of its case, [the defendant] made evidence of his general intent relevant." *United States v. McCall*, 554 F.3d 821, 828 (5th Cir. 2008). Evidence establishing his knowing possession of the prohibited items is therefore highly relevant to matters other than character.

4. **Rule 403 determination**

The court must determine whether the evidence's probative value is substantially outweighed by the risk of undue prejudice by considering the government's need for the evidence, the similarity between the offenses, the amount of time separating them, and the availability of limiting instructions. As described above, defendant's use of one of the

prohibited items charged in this matter the day before his apprehension is highly probative of the elements of the offense. It also serves to complete the story of the crime on trial and explain his encounter with law enforcement in this parish. The evidence poses some danger of prejudice, given the peril in which Butler placed both the adult victims and his minor son. But the court cannot find that the danger of such prejudice substantially outweighs the government's need for the evidence as long as the elements of the charged offense are contested. Rule 403 "is not designed to permit the court to 'even out' the weight of evidence, to mitigate a crime, or to make a contest when there is little or none." *United States v. Barnes*, 803 F.3d 209, 221 (5th Cir. 2015) (quoting *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993)). The temporal proximity of the events mitigates any risk of **unfair** prejudice, as does their involvement in a single criminal episode. Finally, limiting instructions may be available to caution the jury on the proper use of this evidence. The other acts therefore survive Rule 403's balancing test and are admissible.

## III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the defendant's Motion in Limine [doc. 42] be **DENIED** and that the government's Motion in Limine [doc. 43] be **GRANTED**. Accordingly, evidence of defendant's participation in the events of October 20 is admissible in the trial of this matter.

**THUS DONE AND SIGNED** in Chambers on the 17th day of April, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**